UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | PRISONER |
|---|---|---|
| MICHAEL MORIARTY | : | NO. 3:03CV206 (WWE)(HBF) |
| V. | : | |
| WARDEN BROOKS, ET AL. | : | AUGUST 4, 2005 |

### MEMORANDUM IN SUPPPORT OF
### MOTION FOR SUMMARY JUDGMENT
### BY THE DEFENDANT WARDEN BROOKS

This case is a civil rights action by Michael Moriarty, an inmate of the federal correctional system, alleging that while he was an inmate in the Connecticut correctional system in 2001, he injured his left thigh when he fell off a bucket on which he was standing, falling onto a water shutoff valve that had no handle. The case is on remand from the United States Court of Appeals for the Second Circuit reversing a sua sponte dismissal and ordering that plaintiff be allowed to amend his complaint. In his Amended Complaint, plaintiff blames the defendant, Warden Brooks, for his injury because the handle was missing for years. Amended Complaint, p. 7. He also complains that his claim filed in the Claims Commission was unfairly dismissed as late because of delays in notarizing his claim while he was at the Hartford Correctional Center. Complaint, p. 5. Another defendant in the case is Claims Commissioner James R. Smith, who is represented by other counsel. A Motion to Dismiss has been filed on behalf of Commissioner Smith.

We urge the Court to render summary judgment for the defendant Brooks because:

1.    The Eleventh Amendment bars this action against the defendant in his official capacity.

2.    The State is not a "person" subject to liability under 42 U.S.C. § 1983.

3.    The plaintiff has failed to exhaust his prison administrative remedies required by the Prisoner Litigation Reform Act.

4.    The plaintiff has failed to demonstrate personal participation or responsibility.

5.    The Amended Complaint fails to state a claim upon which relief can be granted.

6.    The defendant is protected by his qualified immunity.

7.    The Court should decline to accept jurisdiction over any state law claim in this case.

8.    The state law claims are barred by sovereign immunity, Conn. Gen. Stat. § 4-165, and for failure to exhaust state administrative remedies.

9.    Plaintiff's request for injunctive relief is not applicable to the defendant.

## FACTS

The plaintiff, Michael Moriarty, is an inmate currently incarcerated in the federal prison system.  At the times referenced in his complaint, he was a sentenced inmate in Connecticut correctional facilities.  Def. Statement, para. 1.  At times relevant to the Amended Complaint, the defendant, Leslie Brooks, was the Warden at the Osborn Correctional Institution in Somers, Connecticut.  Def. Statement, para. 2.

On March 20, 2001, the plaintiff was working as a tierman in the J-Basement Dormitory at Osborn.  Def. Statement, para. 3.  As a tierman, plaintiff was an inmate paid a small daily amount of money to do cleaning work in the housing unit with minimal supervision.  Def.

Statement, para. 4.  The work involved light cleaning.  It is not hazardous work.  It does not require one-on-one supervision.  Plaintiff was chosen to be a tierman because of his capacity to act responsibly and reliably.  Def. Statement, para. 5.

Plaintiff was supervised by the Unit Officer, Correctional Officer Joyce Wright.  Officer Wright instructed the plaintiff in his work assignments and provided him with the materials and supplies necessary for his work.  Def. Statement, para. 6.

On March 20, 2001, Officer Wright heard a loud thud in the officer's area.  She quickly proceeded to the area and saw plaintiff holding his left thigh, which was bleeding.  She immediately called a Code White, calling other officers and medical staff to come to plaintiff's aid.  Def. Statement, para. 7.  Officer Wright did not observe how plaintiff was injured, but there were no other inmates involved, and plaintiff reported that he was standing on a five gallon bucket in the supply closet, trying to reach some supplies on top of a storage cabinet, when he slipped and fell backwards onto a water tap, which caused the injury.  Def. Statement, para. 8.

This was certainly not a procedure taught or permitted at the facility.  To the contrary, plaintiff ordinarily received materials and supplies from Officer Wright, and was instructed that he should ordinarily not retrieve supplies himself.  If plaintiff needed more supplies from a high area, he knew or should have known that he was required to request help from staff, not help himself.  Def. Statement, para. 9.  Officer Wright did not instruct plaintiff to stand on the bucket.  That is not a safe method to use to reach high areas as plaintiff should have known, and if she had seen him doing that, she would have told him to get down and she would have arranged to supply him with the materials that he needed pursuant to the usual procedures for tierman work.  Def. Statement, para. 10.

When asked how he was, plaintiff's only complaint was about "stupidity" in reference to his own poor judgment in attempting to stand on the bucket.[1]  Def. Statement, para. 11.

Plaintiff received immediate medical attention for his injury and he was complimentary of staff performance throughout the incident.  Def. Statement, para. 12.

The defendant Brooks retired from the Department of Correction in May, 2001.  Def. Statement, para. 14.  After this incident, plaintiff remained at Osborn Correctional Institution until November 16, 2001, when he was transferred to the MacDougall Correctional Institution in Suffield, Connecticut.  He remained housed at Connecticut Department of Correction facilities until October 3, 2002, when he was discharged to the custody of federal authorities.  Def. Statement, para. 14.  At no time during any of the events referenced in the plaintiff's amended complaint did Warden Brooks have responsibility for the administration of the Hartford Correctional Center, or any other facility of the Department of Correction other than the Osborn Correctional Institution.  Def. Statement, para. 15.

In 2001, the Department of Correction had an administrative remedy available to inmates, wherein they could complain about conditions of confinement or the actions of staff, in DOC Directive 9.6, Inmate Grievances.  Def. Statement, para. 16.  Plaintiff did not file a grievance concerning this accident, but he did file several others on other topics.  Def. Statement, para. 17.

---

[1] A videotape recording this exchange is supplied to the Court.  A copy of the tape cannot be sent to plaintiff due to security restrictions.  However, if plaintiff requests, defendants will ask the Warden at his facility if the tape can be played for him at the convenience of the facility.

## SUMMARY JUDGMENT STANDARDS

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." It has been held that summary judgment may be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and to which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 538 (1986); see also, Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 568-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When a motion for summary judgment is adequately supported by documentary exhibits, depositions, answers to interrogatories or further affidavits, it must be controverted by a similar response setting forth specific facts showing that there is a genuine issue for trial, absent which summary judgment shall be entered, if appropriate. Foster v. Turner Broadcasting, 844 F.2d 955, 959 (2nd Cir. 1988), cert. denied, 488 U.S. 994 (1988). In other words, there must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party opposing summary judgment may not rely on conjecture or conclusory assertions that the other party is not telling the truth. See Gottlieb v. County of Orange, 84 F.3d. 511, 518 (2nd Cir. 1996). Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose. See e.g., Celotex, supra; H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, 879, F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd

Cir. (1986), cert. denied, 480 U.S. 932 (1987). It is particularly appropriate in cases under 42

U.S.C. § 1983 involving insubstantial claims such as this case. Harlow v. Fitzgerald, 457 U.S.

800, 816, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

## ARGUMENT

### 1.     The Eleventh Amendment Bars This Action Against The Defendants In Their Official Capacities

It is now well established that a suit against a State official in his official capacity is, in

actuality, a suit against the State. Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d

878 (1985); Schiff v. Kerrigan, 625 F.Supp. 704, 707 n.7 (D.Conn. 1986). The real party in

interest is the State. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114

(1985). It is equally well settled that the doctrine of sovereign immunity embodied by the

Eleventh Amendment precludes a suit for damages against a state and its agencies. Edelman v.

Jordan, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The Eleventh Amendment[2] is a constitutional limitation on the federal judicial power

established in Article III, Section 2 of the United States Constitution in actions brought by a

citizen against his own state. Pennhurst State School & Hospital v. Halderman (Pennhurst II),

---

[2]  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state.

Despite its limited language, it is well settled that this provision precludes federal court jurisdiction over suits brought against the state by its own citizens, absent consent. Pennhurst State Schools & Hospital v. Halderman (Pennhurst II), 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Edelman v. Jordan, 415 U.S. 651, 673-74, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); see also, Red Star Towing & Transportation Co. v. State of Connecticut, 431 F.Supp. 1003, 1004 (D.Conn. 1976).

465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2 67 (1984); <u>Ex Parte State of New York No. 1</u>, 256 U.S. 490, 491, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); <u>Hans v. Louisiana</u>, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890); <u>Minotti v. Lensink,</u> 798 F.2d 607, 609 (2nd Cir. 1986).  Of course, a sovereign's Eleventh Amendment immunity may be waived by an unequivocally expressed consent to suit.  <u>Pennhurst</u>, <u>supra</u>, at 99; <u>see, e.g.</u>, <u>Edelman v. Jordan</u>, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); <u>Clark v. Barnard</u>, 108 U.S. 436, 477, 2 S.Ct. 878, 27 L.Ed. 780 (1883).  Consent means an explicit statutory provision granting permission to sue.  <u>Florida Dep't. Of Health v. Florida Nursing Home Association</u>, 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); <u>see</u> <u>also</u>, <u>Duguay v. Hopkins</u>, 191 Conn. 222, 227, 464 A.2d 45 (1983); <u>Comba v. Ridgefield</u>, 177 Conn. 268, 273, 413 A.2d 859 (1979).  In the instant case, plaintiff, in part, sues the defendant for money damages in his official capacity.  The plaintiff did not, and cannot, allege consent to suit.  Consequently, summary judgment should be rendered in defendant's favor on this point.

**2.    <u>The State Is Not A "Person" Subject To Liability Under 42 U.S.C. § 1983</u>**

42 U.S.C. § 1983 provides that, "Every <u>person</u>, who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory, subjects ... any citizen ... to the deprivation of any rights ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  (Emphasis added).  The United States Supreme Court has refused, in view of the state's traditional sovereign immunity and the Eleventh Amendment, to construe the word "person" as including a State or its agencies.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); <u>see</u> <u>also</u> <u>Krozser v. New Haven</u>, 212 Conn. 415, 562 A.2d 1080 (1989), <u>cert.</u> <u>denied</u>, 493 U.S. 1036 (1990).  Therefore, to

the extent that this action is against the State through its officials, it is barred for this reason as well.

    3.    **The Plaintiff Has Failed To Exhaust His Prison Administrative Remedies Required By The Prisoner Litigation Reform Act**

Another issue in this case is whether the plaintiff is barred from bringing this lawsuit for failure to exhaust prison administrative remedies. The Federal Prisoner Litigation Reform Act of 1995, a law enacted to help bring relief to a civil justice system overburdened by frivolous prisoner lawsuits, provides that "No action shall be brought with respect to prison conditions … by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." This rule applies in this case, and the evidence in this case shows that the Connecticut Department of Correction had an administrative remedy available to the plaintiff in the form of its Inmate Grievance procedure, Directive 9.6. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 531, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); Berry v. Kerik, 345 F.3d 126 (2nd Cir. 2003); Ortiz v . McBride, 380 F.3d 649, 663 (2nd Cir. 2004).

To satisfy the exhaustion requirement, plaintiff must exhaust, in writing on DOC forms, all steps in the DOC grievance procedure, including any appeals which may be available. However, where a favorable determination is received on an early step, no further appeal is required. Booth v. Churner, supra at 735-36; Ortiz v. McBride, supra at 653; Ziemba v. Clark, 2003 U.S. Dist. LEXIS 22117 (D. Conn. 2003); Hemphill v. New York, 198 F. Supp. 2d 549 (S.D.N.Y. 2002); Reyer v. Ponzal, 206 F.Supp. 2d 431 (W.D.N.Y. 2002). Oral complaints do not suffice to exhaust administrative remedies where the complaint is of no avail. Ortiz v. McBride, supra at 654.

In this case the plaintiff did not file a grievance on any issue within the jurisdiction of the defendant Brooks. <u>See</u> Def. Statement, para. 17. Accordingly, summary judgment should be entered for the defendant Brooks because the plaintiff failed to exhaust his prison administrative remedies.

4. **<u>The Plaintiff Has Failed To Demonstrate Personal Participation Or Responsibility</u>**

To prove a claim under 42 U.S.C. § 1983, the plaintiff must show that the defendants were personally involved in the alleged wrongdoing or contributed in some way to causing plaintiff's alleged injuries. <u>See</u> <u>Poe v. Leonard</u>, 282 F.3d 123, 140 (2nd Cir. 2002); <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2nd Cir. 1994). In the instant case, the defendant Brooks has no personal knowledge of the events in this case, and he did not condone the plaintiff's maneuver. Aff. of Brooks, paras. 2, 7, 8. Plaintiff did not complain to the Warden, even after the fact, about his circumstances. To the contrary, he had only praise for staff. Aff. of Brooks, para. 11. With regard to plaintiff's other complaints about his inability to get his claim papers in order in time to meet the one year statute of limitations at the Claims Commission, all of plaintiff's complaints concern administrators at facilities other than Osborn C.I. <u>See</u> Amended Complaint. The defendant Brooks had no jurisdiction over other facilities, and he retired in May, 2001. Aff. of Brooks, para. 10.

Accordingly, judgment should enter for the defendant Brooks due to plaintiff's failure to demonstrate personal participation or responsibility.

9

5.    **The Amended Complaint Fails To State A Claim Upon Which Relief Can Be Granted**

It is true that Rule 8(a) F.R.Civ.P., broadly governs pleadings in Federal Court, and that notice pleading normally requires only a "short plain statement" of a claim for relief.  <u>See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); <u>Batista v. Rodriguez</u>, 702 F.2d 393, 397 (2nd Cir. 1983).  Also, it has been stated that, "Complaints relying on civil rights statutes are plainly insufficient unless they contain some specific allegation of fact indicating a deprivation of civil rights, rather than simple conclusions." <u>Koch v. Yunich</u>, 533 F.2d 80, 85 (2nd Cir. 1976); see, e.g. Powell v. Jervis, 460 F.2d 551, 533 (enc Cir. 1976); <u>Louis v. Ward</u>, 444 F.Supp. 1107, 1109 (S.D.N.Y. 1978); <u>see also</u> <u>Branch v. Tunnell</u>, 14 F.3d 449 (9th Cir. 1994).  The amended complaint in this case fails to state a claim upon which relief can be granted.

To the extent that plaintiff alleges that the defendant was negligent because the faucet upon which he fell did not have a handle, Amended Complaint, p. 7, it is well settled that negligence does not support a constitutional claim.   Negligence does not constitute a constitutional violation.  <u>Baker v. McCollan</u>, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); <u>Ricciuti v. N.Y.C. Transit Authority</u>, 124 F.3d 123, 128 (2nd Cir. 1997).   A constitutional violation is not implicated by a negligent act of an official.  <u>Daniels v. Williams</u>, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); <u>Procunier v. Navarette</u>, 434 U.S. 555, 565, 98 S. Ct. 855, 55 L.Ed.2d 24 (1998) (immunity); <u>Estelle v. Gamble</u>, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); <u>Trammell v. Keane</u>, 338 F.3d 155, 165 (2nd Cir. 2003).

Accordingly, even if proven, plaintiff's complaint does not spell out a constitutional claim under the federal court's federal jurisdiction under 42 U.S.C. § 1983.[3]

### 6.    The Defendant Is Protected By His Qualified Immunity

The defendant in this case, by virtue of his status as a public official who must be allowed to do his job in good faith without fear of being liable for damages each time he makes a decision on behalf of the State, is clothed with qualified immunity in this case.  Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).

The Supreme Court has held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, supra, at 818.  In order for the immunity to be available, the public official or employee must have acted under an objectively reasonable belief that his actions were lawful.  Gomez v. Toledo, 446 U.S. 635, 100 S. Ct. 1920, 64 L.Ed.2d 572 (1980); Eng v. Coughlin, 858 F.2d 889, 895 (2nd Cir. 1988).

While the issues of qualified immunity and privilege ordinarily involve issues of fact which need to be affirmatively pleaded, the Supreme Court has sanctioned the final resolution of civil rights cases on qualified immunity grounds on motion for summary judgment in appropriate cases.  See Harlow v. Fitzgerald, supra; see also Cartier v. Lussier, 955 F.2d 841 (2nd Cir. 1992); Magnotti v. Kuntz, 918 F.2d 364 (2nd Cir. 1990).

---

[3] Moreover, plaintiff did not even purport to file suit pursuant to 42 U.S.C. § 1983.  Rather, he alleged a claim under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Amended Complaint, p. 2.  Of course, Bivens does not apply to the state officials sued in this case.  Mejia v. Blanchette, 2002 U.S. App. LEXIS 11398 (2nd Cir. 2002) citing Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001).

In evaluating a summary judgment motion based on qualified immunity, the court performs a two-part test. It first tests whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation. See Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed. 2d 272 (2001). If they do not, the plaintiff may not recover because he has suffered no wrong cognizable under § 1983. See, id. If the facts do establish a constitutional violation, however, the court proceeds to the second inquiry, asking whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. at 202. If a reasonable officer could have believed that the challenged conduct was lawful at the time of the violation, then qualified immunity bars the claim. See id; Sira v. Morton, 380 F.3d 57, 68 (2nd Cir. 2004); Luna v. Pico, 356 F.3d 481, 490 (2nd Cir. 2004). In other words, qualified immunity shields a government official from suit if his challenged conduct was objectively reasonable in light of legal rules that were "clearly established" at the time of her actions. To be clearly established, a right must have been recognized in a particularized rather than a general sense. In other words it is not enough that a general right is clearly established by the Constitution. The "contours of that right, as they pertain to a particular issue must have been delineated with sufficient clarity that a reasonable official would understand that what he is doing violates that right." Sira v. Morton, supra at 81 (citations omitted); see also Mozzochi v. Borden, 959 F.2d 1174, 1178 (2nd Cir. 1992). Where no cases squarely govern the case at bar, and where the facts fall in that "hazy border" of the law, the officer is entitled to qualified immunity. Brosseau v. Haugen, 125 S.Ct. 596, 600 (2004). This is because "the qualified immunity standard 'gives ample room for mistaken judgments,'" protecting "'all but the plainly incompetent or those who knowingly violate the law.'" Sira v. Morton, supra at 81 quoting Hunter v. Bryant, 502 U.S. 224,

229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) and <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

In the instant case, we have found no case squarely holding that officials in the same or similar fact pattern present in the instant case act unconstitutionally.  Thus, it was objectively reasonable for the official to believe that his actions did not violate those rights.  The plaintiff's allegations should not suffice to subject this governmental official to the costs of trial.  <u>Harlow</u>, <u>supra</u>, at 817-18.  It follows then, that the public official in this case should be shielded from any personal liability, and summary judgment may enter in his favor.

Should any part of the complaint survive the Motion for Summary Judgment under consideration, then we respectfully reserve the right to prove the defense at trial.

    **7.**    <u>**The Court Should Decline To Accept Jurisdiction Over Any State Law Claims In This Case**</u>

The District Court may decline to exercise supplemental jurisdiction over state law claims in a case when it has dismissed all claims over which it has original jurisdiction, such as the § 1983 claims raised in this case.  <u>See</u> 28 U.S.C. § 1376(c)(3).  Where federal claims are dismissed before trial, the state claims should be dismissed as well.  <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966); <u>Baylis v. Marriott Corp.</u>, 843 F.2d 658, 665 (2nd Cir. 1988).

The federal claims in this case should be resolved in favor of the defendants.  If that occurs, then we urge the Court to decline supplemental jurisdiction over the state law claims in this case, if any.

    **8.**    <u>**The State Law Claims Are Barred By Sovereign Immunity, Conn. Gen. Stat. § 4-165, And For Failure To Exhaust State Administrative Remedies**</u>

### a.    The Action Is Barred By Sovereign Immunity

Plaintiff filed his lawsuit in this case against the defendant, in part, in his official capacity as a state official. <u>See</u> Complaint, p. 1. Since a state can only act through its officers and agents, a suit against a state official concerning a matter in which the official represents the state is, in effect, a suit against the sovereign state. <u>Fetterman v. University of Connecticut</u>, 192 Conn. 539, 550-551 (1984); <u>Horton v. Meskill</u>, 172 Conn. 615 (1977). With regard to the state, it is a long recognized principle of law that the state cannot be sued without its consent. <u>Fetterman</u>, <u>supra</u>, at 550. The state is immune regardless of the nature of the allegations. <u>Hanna v. Capitol Region Mental Health</u>, 74 Conn. App. 264, 270 n. 7 (2002). Plaintiff has not, and cannot, allege consent. Accordingly, this case must be dismissed as to the state.

Also, in his official capacity, the question is whether defendant is immune from suit and liability under the doctrine of sovereign immunity. <u>Hultman v. Blumenthal</u>, 67 Conn. App. 613, 621 (2002). States and state officials sued for engaging in official acts are immune from suit. <u>Will v. Michigan State Dep't of State Police</u>, 491 U.S. 58 (1989); <u>Krozser v. New Haven</u>, 212 Conn. 415, 420-21 (1989), <u>cert. denied</u>, 493 U.S. 1036 (1990); <u>Doe v. Heintz</u>, 204 Conn. 17, 31 (1987); <u>Fetterman v. University of Connecticut</u>, <u>supra</u>, at 550; <u>State v. Chapman</u>, 176 Conn. 362, 365 (1978).

This absolute bar is modified by decisions which hold that sovereign immunity does not bar actions against State officials who acted in excess of statutory authority or pursuant to an unconstitutional statute. <u>Shay v. Rossi</u>, 253 Conn. 134, 169 (2000); <u>Antinerella v. Rioux</u>, 229 Conn. 479, 489 (1994). In such circumstance, the doctrine does not apply because the employee is not carrying out government policy. <u>Antinerella</u>, <u>supra</u>, at 497. This exception does not apply

to cases, such as the instant case, where money damages are sought.  Miller v. Egan, 265 Conn. 301, 325 (2003); Prigge v. Ragaglia, 265 Conn. 338, 349 (2003).

Thus, the trial court should dismiss the state law claims in this case on the grounds of sovereign immunity.

### b.    The Action Is Barred By Conn. Gen. Stat. § 4-165 Immunity

To the extent, that plaintiff sues the defendant in his individual capacity, and, assuming the action is not resolved by finding that the matter is barred by sovereign immunity, then it is appropriate to examine whether the statutory immunity conferred by Conn. Gen. Stat. § 4-165 applies.  Shay v. Rossi, supra, at 162.

The statute provides, in pertinent part, as follows:

> No state officer or employee shall be personally liable for damages or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment.  Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter.

Conn. Gen. Stat. § 4-165.

This statute applies to state employees.  Conn. Gen. Stat. § 4-141. Plaintiff has not alleged that the defendant acted wantonly or maliciously or outside the discharge of his duty or scope of employment with specific reference to his state law claims.  Consequently, the claims are barred by Conn. Gen. Stat. § 4-165.  See State v. Sullivan, 189 Conn. 550, 551-52 (1983); Tucker v. White, 33 Conn. Supp. 546 (1976).

Nor does the information that is alleged constitute immunity-avoiding conduct.  The test for determining whether conduct is wanton, reckless or malicious is stated as follows:

> In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants,

the existence of a state consciousness with reference to the consequences of one's acts ... [Such conduct] is more than negligence, more than gross negligence .... [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them ....  It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action .... [In sum, such] conduct involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent .... [Dubai v. Irish, 207 Conn. 518, 532-33, 542 A.2d 711 (1988)].  (Internal quotation marks omitted). Elliott v. Waterbury, 245 Conn. 385, 415, 715 A.2d 27 (1998).

Shay v. Rossi, supra, at 181.

On this point, the court in Martin v. Brady, 261 Conn. 372 (2002) utilized the following analysis in dismissing a complaint:

We next consider the exception to the immunity provided in § 4-165, and assess whether the plaintiff has sufficiently alleged that the defendants' conduct was "wanton, reckless or malicious."  We conclude that it was not.  As we have observed, "[w]e have never definitively determined the meaning of wanton, reckless or malicious as used in § 4-165.  In the common-law context, however, we have stated:  In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts ….  [Such conduct] is more than negligence, more than gross negligence.  …  [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them.  …  It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action.  …  [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."  (Internal quotation marks omitted.) Id., 181.  Indeed, in some instances, the mere fact that an official has acted in excess of his or her authority may suffice to prove that the conduct was wanton, reckless or malicious.  See id., ("[t]he same facts and allegations that led us to conclude that the defendants' conduct was in excess of their statutory authority, lead us to conclude that the defendants could be found to have acted wantonly, recklessly or maliciously").

In the present case, we conclude that the plaintiff's complaint fails to allege facts, taken in the light most favorable to the plaintiff, to demonstrate that the defendants acted in a wanton, reckless or malicious manner.  There is no allegation in the complaint from which we can infer that the defendants' conduct was indicative of such a state of mind or that the conduct rose to the level of

16

egregiousness necessary to be considered wanton, reckless or malicious.  To the contrary, the facts, as alleged, present a search and arrest conditioned upon an extradition warrant issued by the state of Florida, the validity of which is unchallenged by the plaintiff, and a search conducted pursuant to an allegedly false affidavit.  The facts concerning the initial search and arrest are not inconsistent with the statutory authority provided to the state police pursuant to General Statutes § 53a-22(b).  Moreover, although the plaintiff argues that the affidavit upon which the second search was premised was based upon false statements, he has failed to allege facts sufficient to support the preliminary showing for such a claim as required by *Franks* v. *Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L. Ed. 2d 667 (1978).  *Franks* requires a substantial preliminary showing that a false statement was made knowingly and intentionally, or with reckless disregard for the truth.  Id., 155-56.  The plaintiff neither met this requirement nor requested a hearing that would have enabled him to pursue this claim.  *Martin* v. *Brady*, supra, 64 Conn. App. 441.  In sum, the plaintiff has not alleged any facts that suggest that the defendants' conduct was either outside the scope of their employment or that it was wanton, reckless or malicious.  Accordingly, the plaintiff's claim must fail.

Martin v. Brady, supra at 379-81.

Similarly, in the instant case, there are no allegations as to lead the court to infer that the defendant's conduct was indicative of such a state of mind or that the conduct rose to the level of egregiousness necessary to be considered wanton, reckless or malicious.  Accordingly, the complaint should be dismissed as in Martin v. Brady, supra; see also, Jefferson v. Eddy, No. CV 01 808781 (Order, December 26, 2001), app. dismissed 74 Conn. App. 905 (2002), pet. for certif. to appeal denied 264 Conn. 913 (2003).

The test for whether conduct occurred in the discharge of duty or scope of employment requires the court to review the nature of the allegedly tortious act, and its relation or non-relation to that which the actor was employed to do so.  Rapport v. Rosin Film Delivery Systems, Inc., 127 Conn. 524, 526 (1941); see also, Phipps v. Niejadlik, 175 Conn. 424 (1978).

On this topic, Martin v. Brady is again instructive.  In Martin v. Brady, the defendant police officers were accused of (1) forcibly entering the plaintiff's home without a search

warrant, striking and pushing him to the floor after he submitted to arrest, (2) searching his home pursuant to a search warrant obtained pursuant to a false affidavit, and (3) during that search, smashing windows and breaking down doors.  Nevertheless, the court ruled that these allegations fell within the scope of their employment or within their "granted statutory authority."  Id. at 377.  In this regard, the court tested the nature of the alleged conduct and its relation to the duties incidental to the employment, i.e., whether the alleged conduct was designed to advance any interest of the employer or serve any legitimate state interest, as opposed to being motivated by "purely personal considerations entirely extraneous to his employers duties."  Ibid. at 378 citing Antinerella v. Rioux, supra at 499.  In Martin the court concluded, "None of these actions was arguably outside the scope of their employment as state police officers.  The arrest of the plaintiff was sought for legitimate governmental interests … there was no allegation of misuse of governmental authority for personal gain … nor was there any allegation of extraneous manipulation of governmental authority in order to justify erroneous conduct …"  Id. at 379.

In the instant case, the plaintiff complains of being injured in a prison slip and fall.  The defendant, as Warden at Osborn, formerly known as Somers, is responsible for management of the facility and can permit the work of inmates.  Conn. Gen. Stat. § 18-7.  In the instant case, there are no allegations showing action outside of the defendant's statutory duty, let alone grossly outside of statutory duty as required for loss of sovereign immunity.  This argument has persuaded Connecticut courts to deny lawsuits against state officials in similar circumstances. See, e.g., Todd M. v. Richard, 44 Conn. Sup. 527, 541 (1995); Lipwich v. Frankel, 44 Conn. App. 651, 656 (1997); Bloom v. Gershan, 271 Conn. 96, 108 (2004), Krozser v. New Haven, 212 Conn. 415, 420-21 (1989) cert. denied 493 U.S. 1036 (1990).  Just as the actions of the police

officers in <u>Martin v. Brady</u> were in furtherance of the state's interests, and therefore within the scope of their employment and discharge of their duties, the representation of the State in prosecutions involves matters in furtherance of the state's interest.  Consequently, the defendants are immune under the scope of employment, discharge of duty test in Conn. Gen. Stat. § 4-165.

Accordingly, this case should be dismissed as barred by Conn. Gen. Stat. § 4-165.

### c.    The Plaintiff Has Failed To Obtain Permission To Sue

As the second sentence in Conn. Gen. Stat. § 4-165 declares, any person seeking damages against a state employee immune under that statute must, instead, file a claim with the State Claims Commission, <u>Circle Lanes of Fairfield, Inc. v. Fay</u>, 195 Conn. 534, 538 (1985).  This is an administrative remedy, <u>State v. Sullivan</u>, <u>supra</u>, at 554, and the failure to satisfy it is grounds for dismissal for lack of subject matter jurisdiction.  <u>Doe v. Heintz</u>, <u>supra</u>, at 33-37.  The employee in this case is immune under the Doctrine of Sovereign Immunity and under Conn. Gen. Stat. § 4-165 as the above arguments make clear.  However, the Claims Commissioner did not authorized suit in this case pursuant to Conn. Gen. Stat. § 4-160.  See Amended Complaint, p. 5.

Plaintiff is required to receive Claims Commissioner approval as to these matters before filing suit.  This issue is particularly significant where action is otherwise clearly barred under Conn. Gen. Stat. § 4-165.  In the instant case, plaintiff did not obtain Claims Commissioner approval before filing suit.  He did not satisfy this required administrative remedy.

The Exhaustion Doctrine requires plaintiff to exhaust his administrative remedies before resorting to the courts in Connecticut, and that especially applies to any state law allegations.  <u>See</u> <u>Laurel Park v. Pac</u>, <u>supra</u> at 689.  Exhaustion of administrative remedies is the general rule.

See, e.g. Conn. Mobile Home Ass'n v. Jensen's, Inc., 178 Conn. 586 (1979); Country Lands v. Swinnerton, 151 Conn. 27, 33 (1963); Astarita v. Liquor Control Commission, 165 Conn. 185, 190 (1973).  There is no exception apparent here.  Accordingly, we urge this Court to render summary judgment for the defendant.

        **9.**      **Plaintiff's Request For Injunctive Relief Is Not Applicable To The Defendant**

Plaintiff's Amended Complaint, in part, "asks the court to assume claims comm.. responsibility because of the obvious prejudice that has been shown to him."  Amended Complaint, p. 6.  Inasmuch as the defendant, Brooks, has no responsibility or control over the Office of the Claims Commissioner, there is no ground for an injunctive order against him on this point.

**CONCLUSION**

For all of the foregoing reasons, we urge the court to grant Summary Judgment in favor of the defendant, former Warden Leslie Brooks, in this case.

                                                      DEFENDANT
    Warden Leslie Brooks

    RICHARD BLUMENTHAL
    ATTORNEY GENERAL


BY:_____/s/_____
    Robert F. Vacchelli
    Assistant Attorney General
    110 Sherman Street
    Hartford, CT  06105
    Tel.:  (860) 808-5450
    Fax:  (860) 808-5591
    E-Mail:  robert.vacchelli@po.state.ct.us
    Federal Bar #ct05222

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 4th day

of August, 2005:

       Michael Moriarty, No. 14634-014
       FCI Schuylkill
       Federal Correctional Institution
       P.O. Box 759
       Minersville, PA 17954

       Thomas Clifford
       Assistant Attorney General
       Office of the Attorney General
       55 Elm Street
       Hartford, CT  06106

                             _____/s/_____
                             Robert F. Vacchelli
                             Assistant Attorney General